## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **SISTERS OF CHARITY HEALTH SYSTEM**<br>**2351 East 22nd Street**<br>**Cleveland, Ohio 44115**<br><br><br>        **Plaintiff,**<br><br>vs.<br><br>**AMERICAN GUARANTEE &**<br>**LIABILITY INSURANCE COMPANY**<br>**1299 Zurich Way**<br>**Schaumburg, Illinois 60196**<br><br><br>**Also serve c/o CSC-Lawyers**<br>**Incorporating Service, Statutory Agent**<br>**50 West Broad Street, Suite 1800**<br>**Columbus, Ohio 43215**<br><br>**Also serve**<br>**4 World Trade Center**<br>**150 Greenwich Street**<br>**New York, New York 10007**<br><br><br><br>        **Defendant.** | **CASE NO.: 21-cv-00607**<br><br>**JUDGE DAN AARON POLSTER**<br><br><br>**AMENDED COMPLAINT FOR**<br>**DECLARATORY JUDGMENT AND**<br>**BREACH OF CONTRACT**<br><br>**JURY DEMAND ENDORSED**<br>**HEREIN** |

For its Complaint against Defendant American Guarantee & Liability Insurance Company ("Defendant"), Plaintiff Sisters of Charity Health System ("Plaintiff") alleges and states the following:

## NATURE OF THE CAUSE OF ACTION

1.     This is an action arising out of Defendant denying Plaintiff property damage, time element, extended period of liability, extra expense, civil or military authority, protection and preservation of property, and interruption by communicable disease coverage under its property insurance policy resulting from or caused by the SARS-CoV-2 virus.  Plaintiff's premise and property on the premise suffered direct physical loss or damage from SARS-CoV-2.  Plaintiff is suing for declaratory judgment and breach of contract.

## PARTIES

2.     Plaintiff is an Ohio corporation for non-profit with its principal places of business in Cleveland, Ohio.  Plaintiff owns and operates St. Vincent Charity Medical Center, including, without limitation, Regina Health Center, Light of Hearts Villa, and Joseph's Home (collectively "St. Vincent Charity Medical Center").

3.     Defendant is an Illinois corporation with its principal place of business in Schaumburg, Illinois.  Defendant is an insurance company.

## JURISDICTION AND VENUE

4.     This Court has personal jurisdiction over Plaintiff as it is a citizen of and domiciled in the State of Ohio.  This Court has personal jurisdiction over Defendant under O.R.C. 2307.382(A)(1), (2) and (9).  Defendant has transacted business in Ohio, contracted to supply services in Ohio, and contracted to insure property or risk located in Ohio, all of which are the subject of this lawsuit.

5.     There is complete diversity among the parties.  Plaintiff is an Ohio corporation for non-profit with its principal place of business in Ohio, while Defendant is an Illinois corporation with its principal place of business in Illinois.  The amount in controversy

exceeds $75,0000, exclusive of interest and cost. Therefore, this Court has original jurisdiction under 28 U.S.C. § 1332(a)(1).

6.      Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b)(1).

7.      Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of events or omissions giving rise to claim occurred. Defendant conducted activity that gave rise to the claim for relief, including, without limitation, Defendant denying Plaintiff insurance coverage under its policy in the Northern District of Ohio.

8.      Venue is proper in the Northern District of Ohio under 28 U.S.C. § 1391(b)(2) because it is the judicial district in which a substantial part of the property that is subject of the action is situated. Plaintiff's premises and property which have been damaged by the SARS-CoV-2 virus is located in the Northern District of Ohio.

9.      Plaintiff brings this suit for declaratory judgment for insurance coverage pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201 and breach of contract.

<u>**GENERAL ALLEGATIONS**</u>

    **A.**    <u>**SARS-CoV-2 AND COVID-19**</u>

10.      COVID-19 is a disease caused by the SARS-CoV-2 virus that can result in serious illness or death.

11.      On or about January 23, 2020, the Ohio Department of Health issued a Director's Journal Entry making COVID-19 a Class A reportable disease in Ohio.

12.      As of the date this suit was filed, the State of Ohio has well in excess of 982,000 probable confirmed cases of COVID-19 and 17,000 deaths as a result of COVID-19.

13.     The vast majority of medical literature and studies on the issue have confirmed that the SARS-CoV-2 virus can exist on paper, wood, glass for up to 4-5 days. *E.g.*, *Persistence of Coronavirus on Inanimate Surfaces and Their Inactivation with Biological Agents,* The Journal of Hospital Infection, March 2020, Volume 104, Issue 3, Pages 246-251. This SARS-CoV-2 virus strain can, in all probability, exist on multiple surfaces beyond 4-5 days.

14.     In the science and medical community, it is widely held that the SARS-CoV-2 virus can exist on inanimate surfaces. For example, the website WebMD states that the SARS-CoV-2 virus can exist on wood, including furniture, for four days and on glass, including windows and drinking glasses, for five days.

15.     The insurance industry recognizes that viruses can cause physical loss of or physical damage to property. In the Insurance Service Office, Inc.'s ("ISO") July 6, 2006 Circular regarding an ISO endorsement (CP 01 40 07 06) for exclusion of viruses, ISO stated:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses.

Defendant chose not to use this ISO drafted and approved exclusion to eliminate coverage for loss or damage caused by viruses or bacteria in Plaintiff' policy.

## B.     STATE AND FEDERAL GOVERNMENT ORDERS

16.     On January 20, 2020, the Center for Disease Control confirmed the first SARS-CoV-2 virus case in the United States. *First Case of 2019 Novel Coronavirus in the United State*, NEJM.org, January 31, 2020.

17.     On or about January 31, 2020, President Trump signed the Proclamation on Suspension of Entry as Immigrants and Nonimmigrants of Persons who Pose a Risk of Transmitting 2019 Novel Coronavirus. This Proclamation states: "The entry into the United States, as immigrants or nonimmigrants, of all aliens who were physically present within the People's Republic of China, excluding the Special Administrative Regions of Hong Kong and Macau, during the 14-day period preceding their entry or attempted entry into the United States is hereby suspended and limited subject to section 2 of this proclamation."

18.     On or about March 5, 2020, Governor Mike DeWine issued a state order prohibiting general spectators from attending the Arnold Sports Festival.

19.     On or about March 12, 2020, Governor DeWine announced the closure of all K-12 schools starting on March 16, 2020 and ending on April 3, 2020. The Governor later extended the school closure to May 1, 2020 and then to the end of the school year.

20.     On or about March 9, 2020, Governor DeWine issued Executive Order 2020-01D declaring a state of emergency for the State of Ohio as a result of the SARS-CoV-2 virus and COVID-19.

21.     On or about March 17, 2020, Dr. Amy Acton issued an order postponing elective surgeries to conserve critical protective equipment and to open bed space needed to care for COVID-19 patients.

22.     On or about April 22, 2020, Dr. Acton orders healthcare providers in hospitals and outpatient surgery centers to reassess procedures and surgeries that were postponed.

### C.     PLAINTIFF'S INSURANCE POLICY WITH DEFENDANT

23.     Defendant issued Plaintiff an insurance policy, Policy No. ZMD7498875-01("Insurance Policy").  A copy of the Declaration pages is attached as Exhibit A.  A full copy of the policy is not attached as it is too lengthy to append as an exhibit.  Defendant has a full copy of the Insurance Policy containing the terms, conditions, and exclusions it drafted and issued.

24.     The policy period for the Insurance Policy is January 1, 2020 to January 1, 2021. Plaintiff has paid all applicable premiums owed for the policy and coverages issued by Defendant.

25.     The policy limits for Property Damage and Time Element are $750,000,000.  The policy limits for Extra Expense are $25,000,000.  The policy limits for Civil or Military Authority are for a 30-day period for property within 1 mile, but not to exceed $5,000,000. The policy limits for protection and preservation of property are 48 hours for Gross Earnings; not to exceed a $1,000,000 limit per Location.  The policy limits for Interruption by Communicable Disease are 30 days not to exceed $1,000,000.

26.     St. Vincent Charity Medical Center is an Insured Location under the Insurance Policy.

27.     The Insurance Policy's INSURING AGREEMENT states:  "This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered

Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy."

## 1. **Property Damage**

28.     Paragraph 3.01 COVERED PROPERTY Of SECTION III – PROPERTY DAMAGE states:

> This Policy insures the following property, unless otherwise excluded elsewhere in this Policy, located at an Insured Location or within 1,000 feet thereof or as otherwise provided for in this Policy.
>
> The Insured's interest in buildings (or structures)….
>
> The Insured's interest in Personal Property….

## 2. **Time Element**

29.     Paragraph 4.01 of SECTION IV – TIME ELEMENT states:

> The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability.  The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location.  The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location**, or as provided in Off Premises Storage for Property Under Construction Coverages.
>
> The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations.  The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at the other Insured Locations.  Such other Location must depend on the continuation of business activities at the **Location** that sustained direct physical loss or damage caused by a **Covered Cause of Loss**.

30.     Paragraph 4.02.01.01 of SECTION IV – TIME ELEMENT states:  "Gross Earnings loss is the actual loss sustained by the Insured during the Period of Liability."

31.     Paragraph 4.02.02 EXTENDED PERIOD OF LIABILITY of SECTION IV – TIME

ELEMENT states:

> Upon the termination of the coverage for Gross Earnings loss under
> 4.02.01.01.[,] this Policy will continue to pay the actual Gross Earnings
> loss sustained by the Insured until the earlier of:
>
>> The date the Insured could restore its business with due
>> diligence, to the condition that would have existed had no direct
>> physical loss or damage occurred to the Insured's Covered
>> Property;
>> or
>>
>> The number of consecutive days as stated in the Declarations[.]

32.     Paragraph 4.02.03 EXTRA EXPENSE of SECTION IV – TIME ELEMENT states:

> The Company will pay for the reasonable and necessary Extra
> Expenses incurred by the Insured, including the cost to remove and
> return patients, during the Period of Liability, to resume and continue
> as nearly as practicable the Insured's normal business activities that
> otherwise would be necessarily suspended, due to the direct physical
> loss of or damage caused by a **Covered Cause of Loss** to Property of
> the type insurable under this policy at a **Location**.
>
> The Company will reduce the amount payable as Extra Expense by
> the fair market value remaining at the end of the Period of Liability
> for property obtained in connection with the above.
>
> Extra Expenses mean that amount spent to continue the Insured's
> business activities over and above the expenses the Insured would
> have normally incurred had there been no direct physical loss of or
> damage caused by a **Covered Cause of Loss** to Property of the type
> insurable under this policy at a **Location**.  Extra Expense does not
> include any Gross Earnings loss, the cost of permanent repair or
> replacement of property that has suffered direct physical loss or
> damage, or expenses otherwise payable elsewhere in the Policy.

33.     Paragraph 4.03.01.01 defines the Period of Liability for building and equipment as

follows:  "The period starting from the time of physical loss or damage of the type insured

against and ending when with due diligence and dispatch the building and equipment could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage."

34.     Paragraph 7.11 defines **Covered Cause of Loss** as follows: "All risks of direct physical loss of or damage from any cause unless excluded."

35.     Paragraph 7.29 defines Location as follows: "As specified in the Schedule of Locations," which is on file with the Company.

36.     Paragraph 7.58 defines **Suspension** as follows: "The slowdown or cessation of the Insured's business activities…."

**3.     <u>Special Coverages & Described Causes of Loss</u>**

37.     Paragraph 5.02.03 CIVIL OR MILITARY AUTHORITY of SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS states:

> The Company will for the actual Time Element loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location as stated in the Declarations. The Company will pay for the actual Time Element loss sustained, subject to the deductible provisions that would have applied had the physical loss or damage occurred at the Insured Location, during the time the order remains in effect, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

38.     Paragraph 5.02.24 PROTECTION AND PRESERVATION OF PROPERTY of

SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS states:

> This Policy covers, up to the limit applying to this Coverage:
>
>> The reasonable and necessary costs incurred for actions to temporarily protect or preserve Covered Property; provided such actions are necessary due to actual or imminent physical loss or damage due to a **Covered Cause of Loss** to such Covered Property; and
>>
>> The Gross Earnings loss sustained by the Insured for a period of time not to exceed the hours listed in the Declarations prior to and after the Insured first taking reasonable action for the temporary protection and preservation of Covered Property.

39.     Paragraph 5.02.35 INTERRUPTION BY COMMUNICABLE DISEASE of

SECTION V – SPECIAL COVERAGES & DESCRIBED CAUSES OF LOSS states:

> The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary **Suspension** of the Insured's business activities at an Insured Location if the **Suspension** is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the **Location**.
>
> This Policy also covers the reasonable and necessary cost incurred for the cleanup, removal and disposal of the actual not suspected presence of substance(s) causing the spread of such communicable disease and to restore the locations in a manner so as to satisfy such authorized governmental agency.

40.     The SARS-CoV-2 virus was present at Plaintiff's premise and on its insured

property during portions of the policy period, and at relevant times for Plaintiff's claims

herein.  The presence of the virus has caused ensuing direct physical loss of or damage to

Plaintiff's premises (e.g., HVAC system, ventilation space, walls, chairs, beds, surfaces,

tables, glasses, etc.). Patients, employees, and/or other visitors to the insured property during the coverage period at issue were infected with the SARS-CoV-2 virus.

41. In addition, during portions of the policy period, Plaintiff's business activities at the premises were suspended due to physical loss or damage to its premises and property at the described premises (e.g., HVAC system, ventilation space, walls, chairs, beds, surfaces, tables, glasses, etc.). As a result, Plaintiff has suffered actual losses. Therefore, Plaintiff is entitled to coverage from Defendant for its losses under the Insurance Policy.

42. Plaintiff has sustained reasonable and necessary extra expenses (e.g., avoid or minimize the suspension of the business) incurred to resume and continue as nearly as practicable Plaintiff's normal business activities that otherwise would have been necessarily suspended because of direct physical loss of or physical damage to property (e.g., HVAC, ventilation space, walls, chairs, tables, beds, surfaces, glasses, etc.) caused by the SARS-CoV-2 virus. As a result, Plaintiff has sustained Extra Expenses. Therefore, Plaintiff is entitled to coverage from Defendant for its Extra Expenses under the Extra Expense provision of the Insurance Policy.

43. Plaintiff suffered losses resulting from the necessary suspension of its business activities at the premises that were caused by all applicable State of Ohio COVID-19 related orders that prohibit access to the premises. The civil authority orders were from the State of Ohio's response to direct physical loss of or damage caused by the SARS-CoV-2 virus to property (e.g., neighboring properties within one mile surrounding Plaintiff's premises, including, without limitation, the premises of these properties and the

property within the premises such as HVAC systems and ventilation space) not owned, occupied, leased, or rented by Plaintiff.

44.     Plaintiff has incurred reasonable and necessary costs for actions to temporarily protect or preserve Plaintiff's premises and property.  These actions are necessary due to actual or imminent physical loss or damage to Plaintiff's premises and property because of the SARS-CoV-2 virus.

45.     Plaintiff has sustained actual Gross Earnings loss resulting from the necessary suspension of Plaintiff's business activities at its premises.  The suspension was caused by all applicable State of Ohio COVID-19 related orders enforcing any law regulating communicable diseases.  In addition, Plaintiff's premises were declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the premises.

46.     In addition, Plaintiff incurred costs, expenses, and losses to mitigate the spread of the SARS-CoV-2 virus in response to the civil authority orders.

### D.     Plaintiff Submits Claim to Defendant, Which was Denied

47.     On or about May 5, 2020, Plaintiff presented its claims for coverage under the Insurance Policy to Defendant.

48.     Following the presentation of the claim and on or about June 22, 2020, Defendant sent Plaintiff a reservation of rights letter.  A copy of the reservation of rights letter is attached as Exhibit B.

49.     Defendant stated in its reservation of rights letter that it was investigating Plaintiff's claim.

50.    Defendant never followed up with a formal denial letter.  However, after nearly eight months of silence from Defendant, Defendant has constructively denied Plaintiff's claim.  In addition, based on Defendant's communications and conduct, it is estopped to assert any coverage defense predicated on an alleged lack of claim denial.

## COUNT ONE
### (Declaratory Judgment)

51.    Plaintiff hereby adopt and incorporate as if fully re-written herein all the allegations set forth in paragraphs 1 through 50 of this Complaint.

52.    Plaintiff submitted claims for losses and damages under the property damage, time element, extended period of liability, extra expense, civil or military authority, protection and preservation of property, interruption by communicable disease coverage, and/or the extended and related provisions of the Insurance Policy as a result of all applicable State of Ohio COVID-19 related orders and/or the physical loss of or damage to Plaintiff's premises and property (e.g., chairs, tables, beds, glasses, surfaces, ventilation space, HVAC system, etc.) caused by the SARS-CoV-2 virus.

53.    Plaintiff is entitled to coverage under the property damage, time element, extended period of liability, extra expense, civil or military authority, protection and preservation of property, interruption by communicable disease coverage, and/or the extended and related provisions in its Insurance Policy as a result of all applicable State of Ohio COVID-19 related orders and/or the physical loss of or damage to Plaintiff's premises and property (e.g., HVAC system, ventilation space, walls, chairs, beds, surfaces, tables, glasses, etc.) caused by the SARS-CoV-2 virus.

54.     Defendant has expressly denied Plaintiff's claims for losses and damages under the property damage, time element, extended period of liability, extra expense, civil or military authority, protection and preservation of property, interruption by communicable disease coverage, and/or the extended and related provisions as a result of the Civil Authority Orders and/or the physical loss of or damage to Plaintiff's premises and property (e.g., HVAC system, ventilation space, walls, chairs, beds, surfaces, tables, glasses, etc.) caused by the SARS-CoV-2 virus.

55.     Plaintiff is entitled to recover its incurred costs, expenses, and losses to mitigate the spread of the SARS-CoV-2 virus in complying with all applicable State of Ohio COVID-19 related orders , which are covered under the Insurance Policy.

56.     Defendant has denied Plaintiff's claim for costs, expenses, and losses to mitigate the spread of the SARS-CoV-2 virus in complying with Dr. Acton's orders.

57.     An actual case or controversy exists regarding whether the Insurance Policy under the applicable provisions covers losses, damages, and/or mitigation coverage as a result of all applicable State of Ohio COVID-19 related orders and/or the physical loss of or damage to Plaintiff's premises and property (e.g., HVAC system, ventilation space, walls, chairs, beds, surfaces, tables, glasses, etc.) caused by the SARS-CoV-2 virus.

58.     Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, Plaintiff is entitled to a declaratory judgment declaring that:

> (a) Plaintiff is entitled to coverage for all of its losses under the Property Damage provision of the Insurance Policy;
>
> (b) Plaintiff is entitled to coverage for all of its losses under the Time Element provision of the Insurance Policy;

(c) Plaintiff is entitled to coverage for all of its losses under the Extended Period of Liability provision of the Insurance Policy;

(d) Plaintiff is entitled to coverage for all of its losses and extra expenses under the Extra Expense provision of the Insurance Policy;

(e) Plaintiff is entitled to coverage for all of its losses under the Civil or Military Authority provision of the Insurance Policy;

(f) Plaintiff is entitled to coverage for all of its losses under the Preservation of Property provision of the Insurance Policy;

(g) Plaintiff is entitled to coverage for all of its losses under the Interruption by Communicable Disease provision of the Insurance Policy;

(h) Plaintiff incurred costs, expenses, and losses to mitigate the spread of the SARS-CoV-2 virus in complying with all applicable State of Ohio COVID-19 related orders, which are covered under the Insurance Policy;

(i) Defendant is obligated to pay Plaintiff the established amount of its losses under the Property Damage provision of the Insurance Policy;

(j) Defendant is obligated to pay Plaintiff the established amount of its losses under the Time Element provision of the Insurance Policy;

(k) Defendant is obligated to pay Plaintiff the established amount of its losses under the Extended Period of Liability provision of the Insurance Policy;

(l) Defendant is obligated to pay Plaintiff the established amount of its losses and extra expenses under the Extra Expense provision of the Insurance Policy;

(m) Defendant is obligated to pay Plaintiff the established amount of its losses under the Civil or Military Authority provision of the Insurance Policy;

(n) Defendant is obligated to pay Plaintiff the established amount of its losses under the Protection and Preservation of Property provision of the Insurance Policy;

(o) Defendant is obligated to pay Plaintiff the established amount of its losses under the Interruption by Communicable Disease provision of the Insurance Policy; and

(p) Defendant is obligated to reimburse Plaintiff the costs, expenses, and losses that Plaintiff incurred to mitigate the spread of the SARS-CoV-2 virus in complying with all applicable State of Ohio COVID-19 related orders.

## COUNT TWO
### (Breach of Contract)

59. Plaintiff hereby adopt and incorporate as if fully re-written herein all the allegations set forth in paragraphs 1 through 58 of this Complaint.

60. Plaintiff has performed or substantially performed all required conditions precedent under its Insurance Policy, those provisions have been waived by Defendant, or Defendant is estopped from asserting them.

61. Defendant has refused to provide Plaintiff its losses and mitigation costs and losses under the property damage, time element, extended period of liability, extra expense, civil or military authority, protection and preservation of property, interruption by communicable disease coverage, and/or extended or related coverage of the Insurance Policy as a result of all applicable State of Ohio COVID-19 related orders and/or physical loss of or damage to Plaintiff's premises and property (e.g., HVAC system, ventilation space, walls, chairs, beds, surfaces, tables, glasses, etc.) caused by the SARS CoV-2 virus.

62. By refusing to accept and/or denying such coverage as outlined in its policy, Defendant has materially breached Plaintiff's Insurance Policy.

63.    As a direct and proximate result of Defendant's breaches of the Insurance Policy,

Plaintiff has been damaged in an amount in excess of $75,000.00, exclusive of interest and

cost, the exact amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief against Defendant:

a.    For Count One, a declaratory judgement against Defendant and in favor of
Plaintiff as follows:

1. Plaintiff is entitled to coverage for all of its losses under the Property
Damage provision of the Insurance Policy;

2. Plaintiff is entitled to coverage for all of its losses under the Time Element
provision of the Insurance Policy;

3. Plaintiff is entitled to coverage for all of its losses under the Extended
Period of Liability provision of the Insurance Policy;

4. Plaintiff is entitled to coverage for all of its losses and extra expenses
under the Extra Expense provision of the Insurance Policy;

5. Plaintiff is entitled to coverage for all of its losses under the Civil or
Military Authority provision of the Insurance Policy;

6. Plaintiff is entitled to coverage for all of its losses under the Preservation
of Property provision of the Insurance Policy;

7. Plaintiff is entitled to coverage for all of its losses under the Interruption
by Communicable Disease provision of the Insurance Policy;

8. Plaintiff incurred costs, expenses, and losses to mitigate the spread of the
SARS-CoV-2 virus in complying with all applicable State of Ohio
COVID-19 related orders, which are covered under the Insurance Policy;

9. Defendant is obligated to pay Plaintiff the established amount of its losses
under the Property Damage provision of the Insurance Policy;

10. Defendant is obligated to pay Plaintiff the established amount of its losses under the Time Element provision of the Insurance Policy;

11. Defendant is obligated to pay Plaintiff the established amount of its losses under the Extended Period of Liability provision of the Insurance Policy;

12. Defendant is obligated to pay Plaintiff the established amount of its losses and extra expenses under the Extra Expense provision of the Insurance Policy;

13. Defendant is obligated to pay Plaintiff the established amount of its losses under the Civil or Military Authority provision of the Insurance Policy;

14. Defendant is obligated to pay Plaintiff the established amount of its losses under the Protection and Preservation of Property provision of the Insurance Policy;

15. Defendant is obligated to pay Plaintiff the established amount of its losses under the Interruption by Communicable Disease provision of the Insurance Policy; and

16. Defendant is obligated to reimburse Plaintiff the costs, expenses, and losses that Plaintiff incurred to mitigate the spread of the SARS-CoV-2 virus in complying with all applicable State of Ohio COVID-19 related orders.

b. For Count Two, an award of damages in excess of $75,000.00, exclusive of interest and cost, the exact amount to be proven at trial, to Plaintiff for Defendant's breaches of the Insurance Policy;

c. An award against Defendant of pre- and post-judgment interest on any amounts awarded;

d. An award against Defendant and in favor of Plaintiff for its attorney's fees and costs; and

e. An award of such other or further equitable relief that this Court may deem just.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues and claims that are decided by a jury.

/s/ Frank Gallucci_____
Frank Gallucci, Esq. (#0072680)
Plevin & Gallucci
55 Public Square, Suite 2222
Cleveland, Ohio  44113
(216) 861-0804
fgallucci@pglawyer.com


/s/ W. Craig Bashein_____
W. Craig Bashein, Esq. (#0034591)
John P. Hurst, Esq. (#0010569)
Bashein & Bashein C0., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio  44113
(216) 771-3239
cbashein@basheinlaw.com
jhurst@basheinlaw.com


*/s/ R. Eric Kennedy*_____
R. Eric Kennedy, Esq. (#0006174)
Daniel P. Goetz, Esq. (#0065549)
Brian E. Roof, Esq. (#0071451)
WEISMAN, KENNEDY & BERRIS   CO.,
L.P.A.
2900 Detroit Avenue
Cleveland, Ohio 44113
Tel :(216)781-1111
Fax:  (216)781-6747
Email: ekennedy@weismanlaw.com
Email: dgoetz@weismanlaw.com
Email: broof@weismanlaw.com


*Counsel for Plaintiff*

## Policy Number

ZMD7498875-01

## Named Insured and Mailing Address

Sisters Of Charity Health System

2351 East 22nd Street

Cleveland, OH  44115

hereafter referred to as the **First Named Insured**.

The following are all hereafter referred to as the "Insured", including legal representatives.

The **First Named Insured**; and

any subsidiary of the **First Named Insured**.  The **First Named Insured**'s interest in any partnership, joint venture or other legal entity in which the **First Named Insured** has management control or ownership as now constituted or hereafter is acquired.

When any Insured described above is a party to a written contract or agreement on file, that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured, as its interest may appear, for physical damage to insured property which is the subject of the written contract or agreement on file, before any loss occurs; and does not provide any Time Element Coverage to the legal entity, except as provided under Leasehold Interest Coverage of this policy or as specifically endorsed to the policy.

## Producer

Willis of Ohio, Inc

1001 Lakeside Avenue

#1500

Cleveland, OH  44114

## Policy Period

Begins January 1, 2020 at 12:01 AM; Ends January 1, 2021 at 12:01 AM

## Insurance is provided by the following Stock Company

American Guarantee and Liability Insurance Company

hereafter referred to as the "Company",

## Proportionate Share of Company for Loss or Damage

100%    Quota Share    Being $750,000,000  part of a $750,000,000 primary loss layer

| Annual Policy Premium | Surcharges, Taxes & Fees | Total Policy Premium |
|---|---|---|
| $317,063.00 | Not Applicable | $317,063.00 |

PREMIUM PAYABLE

This Policy is issued in consideration of an initial premium.  The **First Named Insured** shown on the Policy is responsible for the payment of all premiums and will be the payee for any return premiums paid by the Company.  Premiums will be paid in the currency designated in Section II-2.02.

EXHIBIT

A

tabbies

# SECTION I – POLICY APPLICABILITY

### 1.01.   INSURING AGREEMENT

This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.

No coverage can be provided in violation of any U.S. economic or trade sanctions laws or regulations. Such coverage, which may be in violation of any U.S. economic or trade sanctions laws and regulations, shall be null and void and the Company shall not be liable to make any payments or provide any defense under this policy.

### 1.02.   APPLICATION OF POLICY PERIOD

In the event of a claim the Policy Period is measured by local time at the location where the direct physical loss or damage occurs.

### 1.03.   TERRITORY

Coverage under this Policy applies to all covered loss or damage that takes place in the United States of America, its territories and possessions, including the District of Columbia and the Commonwealth of Puerto Rico.

# SECTION II - DECLARATIONS

## 2.01    INSURED LOCATION

This Policy insures an Insured Location unless otherwise provided.

An Insured Location is a **Location** :

2.01.01.    Listed on a Schedule of Locations on file with Company; per statement of values dated 10/31/2019.

2.01.02.    Covered as a **Miscellaneous Unnamed Location** ; and

2.01.03.    Covered under the terms and conditions of the Newly Acquired Coverage or Errors and Omissions Coverage.

## 2.02.    CURRENCY

All amounts, including deductibles and limits of liability, indicated in this Policy are in USD unless otherwise indicated by the three-letter currency designator as defined in Table A.1 Currency and Funds code list, International Standards Organization (ISO) 4217, edition effective at inception of this Policy.

## 2.03.    POLICY LIMITS OF LIABILITY

The Policy Limit is $750,000,000 for the total of all coverages combined regardless of the number of **Locations** involved subject to the following provisions:

2.03.01.    The Company will pay no more in any one (1) **Occurrence** than its proportionate share of the Policy Limit.

2.03.02.    Limits of Liability stated below or elsewhere in this Policy are part of and not in addition to the Policy Limit.

2.03.03.    When an **Annual Aggregate** Limit of Liability is shown, the Company's maximum amount payable will not exceed such Limit of Liability during the **Policy Year** regardless of the number of **Locations**, Coverages or **Occurrences** involved.

2.03.04.    The most the Company will pay in an **Occurrence** caused by a **Described Cause of Loss** is the Limit of Liability for that **Described Cause of Loss**.

2.03.05.    Limits of Liability in an **Occurrence** apply to the total loss or damage, including any insured Time Element loss, at all **Locations** and for all Coverages involved.

2.03.06.    Limits of Liability

   The following are the Limits of Liability in an **Occurrence** unless otherwise shown. The Company will pay no more in any one (1) **Occurrence** than its proportionate share.

   The limit of Liability we show for a coverage part is the maximum amount we will pay for the coverage part.

   Sublimits within a coverage part may reduce the amount payable under a coverage part.

Limits of Liability and Coverage Part

| Limit | Description |
| --- | --- |
| $750,000,000 | Property Damage (PD) and Time Element (TE) combined at scheduled locations: on file with the Company per statement of values dated 10/31/2019. |
| | But not to exceed: |
| | $25,000,000          EXTRA EXPENSE |
| | $5,000,000          LEASEHOLD INTEREST |
| $25,000,000 | ACCOUNTS RECEIVABLE |

| | |
|---|---|
| $1,000,000 | COMPUTER SYSTEMS DAMAGE<br>in the **Annual Aggregate** |
| $10,000,000 | CONTINGENT TIME ELEMENT per occurrence but not to exceed a $10,000,000 limit per **Direct Dependent Time Element Location**<br>**NCP** for **Earth Movement, Flood, Named Storm** or Volcanic Eruption;<br>**NCP** per **Indirect Dependent Time Element Location;**<br>$5,000,000 limit per **ATTRACTION PROPERTY** |
| $25,000,000 | DEBRIS REMOVAL<br>or 25% of the total property damage loss, whichever is greater |
| $500,000 | DECONTAMINATION COSTS |
| $100,000 | DEFERRED PAYMENTS |
| $10,000,000 | ERRORS AND OMISSIONS |
| $25,000,000 | EXPEDITING COSTS |
| $1,000,000 | **FINE ARTS** but not to exceed $100,000 limit per item |
| $1,000,000 | FIRE DEPARTMENT SERVICE CHARGE |
| $25,000,000 | INCREASED COST OF CONSTRUCTION |
| $500,000 | LAND AND WATER CONTAMINANT CLEANUP, REMOVAL AND DISPOSAL |
| $500,000 | **LAND IMPROVEMENTS** |
| $10,000,000 | MISCELLANEOUS PERSONAL PROPERTY |
| $25,000,000 | **MISCELLANEOUS UNNAMED LOCATION** |
| $10,000,000 | OFF PREMISES SERVICE INTERRUPTION |
| $500,000 | PROFESSIONAL FEES |
| $2,500,000 | RADIOACTIVE CONTAMINATION |
| $500,000 | RESEARCH ANIMALS in excess of $50,000<br>but not to exceed $10,000 per animal |
| $100,000 | TENANTS PROHIBITED ACCESS |
| $2,000,000 | TRANSIT |
| $10,000,000 | **VALUABLE PAPERS AND RECORDS** |
| $25,000,000 | **NEW CONSTRUCTION OR ADDITIONS** |
| $1,000,000 | OFF PREMISES STORAGE FOR PROPERTY UNDER CONSTRUCTION |
| $500,000 | HOME HEALTH CARE MEDICAL EQUIPMENT |
| $1,000,000 | MOBILE MEDICAL EQUIPMENT |
| $1,000,000 | PROTECTION OF PATIENTS in excess of $50,000 |
| $250,000,000 | **BREAKDOWN** OF EQUIPMENT not to exceed:<br>$1,000,000 for **AMMONIA CONTAMINATION**<br>$1,000,000 for SPOILAGE |

| | |
|---|---|
| $100,000,000 | **EARTH MOVEMENT** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:** |
| | a). **NCP** for property located in Zone 1 for **Earth Movement** as described in Appendix A & B. |
| | b). **NCP** for property located in Zone 2 for **Earth Movement** as described in Appendix A & B. |
| $100,000,000 | **FLOOD** in the **Annual Aggregate** but not to exceed the following limits in the **Annual Aggregate:** |
| | a). **NCP** as respects Locations with any part of the legal description within a **Special Flood Hazard Area (SFHA)** and not otherwise listed herein. |
| | b). $25,000,000 as respects Locations with any part of the legal description within a **Moderate Flood Hazard Area (MFHA)** and not otherwise listed herein. |
| $750,000,000 | **NAMED STORM** |
| | but not to exceed the following limits in the **Annual Aggregate**: |
| | a). **NCP** for property located in Zone 1 as described in Appendix C & D. |
| | b). **NCP** for property located in Zone 2 as described in Appendix C & D. |

2.03.07.  Causation Definition:  The following term is included in the definition of the Peril as indicated:

**Storm Surge** is part of **Flood**

2.03.08.  Time and Distance Limitations: In addition to the Limits of Liability shown elsewhere in this Policy, the following limitations apply:

| | |
|---|---|
| Located within 1 mile(s) of the Insured Location. | **ATTRACTION PROPERTY** |
| 30 day period for property within 1 mile(s) but not to exceed a $5,000,000 limit. | CIVIL OR MILITARY AUTHORITY |
| 30 day(s) | The actual Time Element loss sustained by the Insured arising out of the **Delay in Completion** |
| 24 months | GROSS EARNINGS |
| 365 day(s) | EXTENDED PERIOD OF LIABILITY |
| 365 day(s) | **ORDINARY PAYROLL** |
| 30 day period but not to exceed a $1,000,000 limit. | IMPOUNDED WATER |
| 30 day period for property within 1 mile(s) but not to exceed a $5,000,000 limit. | INGRESS/EGRESS |
| 30 day period but not to exceed a $100,000 limit. | INTERNATIONAL INTERDEPENDENCY |
| 30 day period but not to exceed a $1,000,000 limit. | INTERRUPTION BY COMMUNICABLE DISEASE |
| 120 day period but not to exceed a $10,000,000 limit per **Location.** | NEWLY ACQUIRED |
| 48 hours for Gross Earnings: not to exceed a $1,000,000 limit per **Location.** | PROTECTION AND PRESERVATION OF PROPERTY |
| 12 months but not to exceed a $2,500,000 limit. | RESEARCH AND DEVELOPMENT |
| 30 day period but not to exceed a $100,000 limit. | RESTORATION OF EMERGENCY GENERATORS |

2.03.09.        Time Specifications: As follows:

| EARTH MOVEMENT Occurrence | 168 hours |
|---|---|
| NAMED STORM Occurrence | 72 hours |
| Cancellation for non-payment of premium | 10 days |
| Cancellation for any other reason | 90 days |

2.03.10.        Valuation:  As follows:

| Finished Stock | Replacement Cost |
|---|---|
| Merchandise that carries the Insured's brand or trade name | Selling Price |
| All other Merchandise | Selling Price |
| Vehicles | Actual Cash Value |

## 2.04.        QUALIFYING PERIOD

For the Coverages listed below the following **Qualifying Period** applies:

| OFF PREMISES SERVICE INTERRUPTION PROPERTY DAMAGE & TIME ELEMENT COVERAGE applies separately at each location. | 24 Hours |
|---|---|
| COMPUTER SYSTEMS DAMAGE COVERAGE | 48 Hours |
| TENANTS PROHIBITED ACCESS COVERAGE applies separately at each location. | 48 Hours |
| NEW CONSTRUCTION AND ADDITIONS: **Delay in Completion** applies separately at each location. | 30 Days |
| INTERRUPTION BY COMMUNICABLE DISEASE applies separately at each location. | 24 Hours |

## 2.05.        DEDUCTIBLES

Each claim for loss or damage as insured against arising out of any one (1) **Occurrence** shall be adjusted separately.  The Company shall not be liable unless the Insured sustains loss or damage in excess of the deductible(s) stated below and then only for the proportionate share of such excess amount(s).

2.05.01.        A deductible that applies on a per **Location** basis will apply separately to each **Location** where the physical loss or damage occurred regardless of the number of **Locations** involved in the **Occurrence**.

2.05.02.        Unless stated otherwise, if two or more deductibles apply to an **Occurrence**, the total deducted will not exceed the largest applicable deductible.  If two or more deductibles apply on a per **Location** basis in an **Occurrence**, the largest deductible applying to each **Location** will be applied separately to each such Location.

| 2.05.03. | If separate Property Damage and Time Element loss deductibles are shown, then the deductibles shall apply separately. |
|---|---|
| 2.05.04. | When a "minimum deductible" per **Occurrence** is shown and is applicable to an **Occurrence**, the "minimum deductible" is the minimum dollar amount of covered damage that the Insured will retain in any one (1) **Occurrence**. The amount retained for purposes of applying the "minimum deductible" is the sum of: |
| 2.05.04.01. | the specified location deductible for each location where the amount of covered damage exceeds the specified location deductible; and |
| 2.05.04.02. | the amount of covered damage for each location where the amount of covered damage is less than specified location deductible. |
| 2.05.05. | Policy Deductible(s) |
| 2.05.05.01. | $50,000 combined Property Damage (PD) and Time Element (TE)<br><br>per **Occurrence** except as follows: |
| 2.05.05.02. | Exceptions to Policy Deductible(s) |
| 2.05.05.02.01. | Contingent Time Element<br><br>$50,000 per Location at each **DirectDependent Time Element Location, Indirect Dependent Time Element Location,** and **Attraction Property** where the physical loss or damage occurs regardless of any other deductibles that may also apply.<br><br>However, when the loss results from Earthquake, **Named Storm** and/or **Flood** such loss shall be subject to its respective deductible(s) for **DirectDependent Time Element Location** as follows:<br><br>Earthquake: $100,000 per **Location**;<br><br>**Named Storm**: $50,000 per **Location**;<br><br>**Flood**: $100,000 per **Location** |
| 2.05.05.02.02. | Earthquake<br>The following deductibles apply to loss or damage caused by or resulting from Earthquake. This Earthquake deductible will apply regardless of any other deductibles that may also apply. |
| 2.05.05.02.02.01 | $100,000 combined Property Damage (PD) and Time Element (TE)<br><br>per **Occurrence**; |
| 2.05.05.02.03. | Flood<br>The following deductibles apply to loss or damage caused by or resulting from **Flood**. This **Flood** deductible will apply regardless of any other deductibles that may also apply. |
| 2.05.05.02.03.01. | $100,000 combined Property Damage (PD) and Time Element (TE)<br><br>per **Occurrence** except as follows: |
| 2.05.05.02.03.02. | As respects **Locations** with any part of the legal description within a **Moderate Flood Hazard Area (MFHA)**: |
| 2.05.05.02.03.02.01. | Property Damage (PD) and Time Element (TE) combined - $100,000 , for the **Location** where the direct physical loss or damage occurred, per **Location**. |

2.05.05.02.04.  Named Storm

The following deductibles apply to loss or damage caused by or resulting from **Named Storm**. The **Named Storm** deductible will apply regardless of any other deductibles that may also apply.

2.05.05.02.04.01.  $50,000 combined Property Damage (PD) and Time Element (TE)

per **Occurrence**;

2.05.05.02.05.  Breakdown of Equipment Deductible(s)

2.05.05.02.05.01.  $50,000 combined Property Damage (PD) and Time Element (TE)

per **Occurrence** for loss or damage caused by **Breakdown**;

2.05.05.02.06.  Water or Liquid Damage Deductible(s)

The following deductible applies to loss or damage caused by or resulting from covered water or other liquids not otherwise excluded, but not caused by **flood** or discharge in response to a fire.

2.05.05.02.06.01.  $100,000 combined Property Damage (PD) and Time Element (TE)

per **Occurrence** for loss or damage caused by water or liquid damage;

2.05.05.02.07.  Other Deductibles

Not Applicable

_____          _____
Authorized Representative                                 Date


_____          _____
Print Name of Authorized Rep.                          Office



RECEIVED

JUL - 1 2020

**ZURICH**

June 22, 2020

Sisters Of Charity Health System
2351 East 22nd Street
Cleveland, OH 44115
Attn to: Kimberly Connors
kconnors@sistersofcharityhealth.org

| Re: | Claim #: | 5630051042 |
|---|---|---|
| | Insured: | Sisters Of Charity Health System |
| | Policy #: | ZMD 7498875-01 |
| | Date of Loss: | March 17, 2020 |
| | Loss Location: | Multiple Location (s) |

American
Guarantee &
Insurance
Company
PO Box 968057
Schaumburg, IL
60196

Dear Ms. Connors,

We are writing on behalf of American Guarantee & Liability Insurance Company
with respect to an insurance claim submitted by Sisters Of Charity Health System
("Named Insured") under Policy ZMD7498875-01 on May 5, 2020 in connection
with the recent outbreak of coronavirus/COVID-19 virus with a reported date of loss
March 17, 2020.

Per our conversation on May 8, 2020, American Guarantee & Liability Insurance
Company understands that the Sisters Of Charity Health System Center is filing a
claim under the Communicable Disease Suspension of Operations--Business Income
Coverage provision and the Business Income Coverage provision for the alleged loss
of "business Income" to multiple locations resulting from the Covid-19 Pandemic.

American Guarantee & Liability Insurance Company understands that Sisters Of
Charity Health System were required to cancel non elective surgeries and procedures
due to the order put into effect March 18, 2020 by Governor Mike DeWine. Further,
we understand there is no physical damage being claim to any of the Sisters Of
Charity Health System premises.

American Guarantee & Liability Insurance Company issued Edge Policy No.
ZMD7498875-01 to Sisters Of Charity Health System effective January 1, 2020
through January 1, 2021 ("Policy"). American Guarantee & Liability Insurance
Company is investigating this claim to determine whether coverage is implicated
under the Policy and, if so, to what extent. As we trust you can appreciate, the
insurance claim is at an early state and little detailed information has been provided
upon which we can render any definitive conclusions concerning the availability of



EXHIBIT
B


**ZURICH**

insurance coverage for this claim. Nonetheless, at this time, American Guarantee & Liability Insurance Company wishes to call your attention to certain provisions, exclusions, and limitations in the Policy that may affect the coverage afforded under the Policy

Section 1.01 of the Policy contains the following Insuring Agreement:

### 1.01. INSURING AGREEMENT

This Policy Insures against direct physical loss of or damage caused by a **Covered Cause of Loss** to Covered Property, at an Insured Location described in Section II-2.01, all subject to the terms, conditions and exclusions stated in this Policy.

The term "Covered Cause of Loss" is defined in Section 7.11 of the Policy as "All risks of direct physical loss of or damage from any cause unless excluded."

The presence of the COVID-19 virus does not constitutes as direct physical loss or damage to property. Moreover, American Guarantee & Liability Insurance Company notes, that the Policy excludes certain causes of loss. In particular, the following "Contamination" exclusion set forth in Section 3.03 of the Policy applies:

### 3.03.   EXCLUSIONS

The following exclusions apply unless specifically stated elsewhere in this Policy:

3.03.01.  This Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy.

3.03.01.01.  **Contamination**, and any cost due to **Contamination** including the inability to use or   occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy.

The terms "Contamination (Contaminated)" and "Contaminants" are defined in Section 7.09 and 7.10 of the Policy as follows:

7.09.  **Contamination (Contaminated)** - Any condition of property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin,



pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, **Fungus**, mold or mildew.

7.10. **Contaminant(s)** - Any solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste (including materials to be recycled, reconditioned or reclaimed), asbestos, ammonia, other hazardous substances, **Fungus** or **Spores**.

The presence of the COVID-19 virus falls within the definition of **Contamination**. Accordingly, any loss resulting from the presence of the COVID-19 virus and therefore, excluded as a covered cause of loss under the Policy.

American Guarantee & Liability Insurance Company understands that, Sisters Of Charity Health System is also presenting a claim for loss of income under the Time Element coverage provision set forth in Sections 4.01 of the Policy, which provides, in pertinent part:

4.01   LOSS INSURED

4.01 LOSS INSURED

4.01.01   The Company will pay for the actual Time Element loss the Insured sustains, as provided in the Time Element Coverages, during the Period of Liability. The Time Element loss must result from the necessary **Suspension** of the Insured's business activities at an Insured Location. The **Suspension** must be due to direct physical loss of or damage to Property (of the type insurable under this Policy other than **Finished Stock**) caused by a **Covered Cause of Loss** at the **Location** , or as provided in Off Premises Storage for Property Under Construction Coverages.

The Company will also pay for the actual Time Element loss sustained by the Insured, during the Period of Liability at other Insured Locations. The Time Element loss must result from the necessary Suspension of the Insured's business activities at the other Insured Locations. Such other Location must depend on the continuation of business activities at the Location that sustained direct physical loss or damage caused by a Covered Cause of Loss..



Coverage under Sections 4.01.01 applies only when there is a necessary suspension of the insured's business as a result of direct physical loss of or damage to property caused by a "covered cause of loss" at the Insured location. As noted above, it does not appear that the presence of the COVID-19 virus constitutes direct physical loss or damage to property. Moreover, to the extent the "contamination" exclusion cited above and found in Section 3.03.01 of the Policy applies, coverage may not be available under Section 4.01 of the Policy.

Finally, we note that Section 5.02.35 of the Policy contains the following provision entitled "Interruption by Communicable Disease":

### Interruption by Communicable Disease

The Company will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the Location.

This Policy also covers the reasonable and necessary cost incurred for the clean-up, removal and disposal of the actual not suspected presence of substances(s) causing the spread of such communicable disease and to restore the locations in a manner so as to satisfy such authorized governmental agency.

This Coverage will only apply when the period of time that access is prohibited exceeds the time shown as Qualifying Period in the Qualifying Period clause of the Declarations section. If the Qualifying Period is exceeded, then this Policy will pay for the amount of loss in excess of the Policy Deductible, but not to exceed the number of consecutive days following such order as stated in the Declarations up to the limit applying to this Coverage.

This Coverage will not apply for loss or damage that is payable under any other provision in this Policy.

In order for coverage to apply under the Interruption by Communicable Disease provision, the Sisters Of Charity Health System must demonstrate, among other things, a suspension of the insured's operations caused by an order of an authorized governmental agency to enforce a law or ordinance regulating communicable disease and that the order results in a declaration that all or a portion of the location is declared uninhabitable as a result of the threat of the spread of communicable disease, such that access to the location or portions of the location is prohibited. Additionally, as noted





**ZURICH**

in Section 2.04 ("Qualifying Period"), the Qualifying Period for this coverage is "24 Hours", which "applies separately at each location." Moreover, as set forth in Section 2.03.08, coverage under the Communicable Disease provision is available for a "30-day period but not to exceed a $1,000,000 limit".

We encourage Sisters Of Charity Health System to refer its Policy in its entirety. At this time, please be advised that American Guarantee & Liability Insurance Company reserves its right to rely on the policy provisions cited above, and any other provisions that may later be deemed applicable.

Our investigation of the claim and all efforts taken in regard to the determination of coverage is without waiver of the terms and conditions of the policy.

American Guarantee & Liability Insurance Company is continuing our investigation of your claim under a reservation of rights. We will provide you with our coverage position as soon as our investigation is complete. Inasmuch as American Guarantee & Liability Insurance Company's investigation still is ongoing, there may be additional exclusions or limitations in the Policy that could apply under the circumstances of this loss. American Guarantee & Liability Insurance Company's efforts in conducting its investigation or in meeting with representatives of the insured to discuss the insurance claim should not be considered a waiver or variance of any of the Policy's terms and conditions. In addition, no consultant retained by or on behalf of American Guarantee & Liability Insurance Company has any authority to interpret, waiver, or alter any of the terms, conditions, or limitations of the Policy. All coverage determinations are reserved to American Guarantee & Liability Insurance Company exclusively. All rights are reserved.

American Guarantee & Liability Insurance Company is willing to review and consider any additional documentation and/or information you wish to provide that you believe might have a bearing on coverage for this claim. Please forward such documentation or information for our review as soon as possible.

Please feel free to contact me if you have questions about the contents of this letter or need our further assistance.

Sincerely,

*Morgan Jackson*

**Morgan Jackson**
**National General Adjuster, Large Loss Property Claims**
American Guarantee & Liability Insurance Company
P.O. Box 968057



Schaumburg, IL 60196
Direct Dial : (214) 866-1138
Email : morgan.jackson@zurichna.com

Cc:     Willis of Ohio, Inc
        1001 Lakeside Avenue
        #1500
        Cleveland, OH 44114





**ZURICH**

Sisters Of Charity Health System
2351 East 22nd Street
Cleveland, OH 44115
Attn to: Kimberly Connors
Claim #: 5630051042

